UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHIL WALDREP EVANGELISTIC ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 22-cv-00153 (APM) |
| SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Phil Waldrep Evangelistic Association applied for a Shuttered Venue Operators Grant through the Small Business Administration ("SBA") during the COVID-19 pandemic. SBA denied the application. Plaintiff challenges that decision under the Administrative Procedure Act as arbitrary and capricious, contrary to law, and unsupported by substantial evidence. Before the court are the parties' cross-motions for summary judgment. For the reasons that follow, the court grants Plaintiff's motion for summary judgment and remands Plaintiff's application to the SBA for reconsideration consistent with this opinion.

I.     BACKGROUND

    A.     The Shuttered Venue Operators Grant Program

In December 2020, Congress established the Shuttered Venue Operators Grant ("SVOG") program to alleviate the economic hardship that the COVID-19 pandemic imposed on certain live-entertainment businesses. *See* Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022 (2020) (codified at 15 U.S.C. § 9009a). "When the COVID-19 pandemic began, event venues were the first to close, and Congress

predicted that they would be among the last businesses to open once it was gone." *Monkey Jungle, Inc. v. SBA*, No. 22-cv-2537 (JDB), 2024 WL 3987016, at *1 (D.D.C. Aug. 29, 2024) (internal quotation marks and alterations omitted) (quoting 166 Cong. Rec. S7901 (Dec. 21, 2020) (statement of Sen. Cornyn)).  In total, Congress appropriated $16.25 billion to the SVOG program. Pub. L. No. 116-260, § 323(d)(1)(H), 134 Stat. at 2021 (appropriating an initial $15 billion); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5005, 135 Stat. 4, 91 (2021) (appropriating an additional $1.25 billion).

As administrator of the SVOG program, *see* 15 U.S.C. § 9009a(b), the SBA awarded grants to various entities made eligible by Congress, including "live venue operator[s] or promoter[s]," *id.* § 9009a(a)(1)(A).  To qualify as such and receive a grant, an applicant needed to demonstrate that it satisfied several criteria.  Relevant here, the applicant had to establish that it "organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists" as its "principal business activity."  *Id.* § 9009a(a)(3)(A)(i)(I). As to what forms of live entertainment constituted a performing arts event, SBA looked to "events such as musical concerts, comedy shows, theatrical productions, dance performances, or other live renderings of similarly artistic works."  SBA, *Shuttered Venue Operators Grants—Frequently Asked Questions* at 10 (July 22, 2021), https://perma.cc/PWR3-GYG9 [hereinafter FAQ].[1] Additionally, the applicant had to show that "not less than 70 percent of [its] earned revenue . . . is generated through . . . cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise[.]"

---

[1] Information on SBA's website is properly subject to judicial notice. *See Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33–34 (D.D.C. 2014) (taking judicial notice of the FDA's FAQs in an Administrative Procedure Act summary judgment case).

15 U.S.C. § 9009a(a)(3)(A)(i)(II).  The SVOG stopped accepting applications on August 20, 2021. *See* SBA, About SVOG (last visited March 31, 2025), https://perma.cc/K8QS-HWQT.

SBA provided SVOG applicants guidance on its website.  This included an "Application Checklist," which sought to "assist with gathering and preparing the necessary SVOG application materials[.]"  Administrative Record ("AR") 891–96.[2]  Other application tools included the SVOG FAQ, which "answers common questions about the SVOG program, defines terms, and provides additional guidance," FAQ at 1, and the SVOG Eligibility Matrix, which "provide[s] the general eligibility criteria that apply to all applicants, as well as the eligibility criteria for each entity type," SBA, *SVOG Eligibility Matrix* at 1 (July 9, 2021), https://perma.cc/5JVY-GQMB [hereinafter Eligibility Matrix].

In the event of an application denial, SBA provided an appeals process.  FAQ at 36–37. SBA, however, added that "[t]here is no secondary appeals process through the SVOG program. Determinations on appeal are the final agency decisions."  *Id.* at 37.  Thus, it cautioned applicants to carefully review SBA guidance to ensure that they uploaded "all relevant documents during the appeals process."  *Id.*  Separately, SBA provided a "reconsideration" process, but only for applicants who received an award at least $100 less than the original amount requested.  *Id.* at 37–38.

### B.      Plaintiff's Application

#### 1.      *Pre-Suit Application Denials*

Plaintiff Phil Waldrep Evangelistic Association ("PWEA") is a 501(c)(3) non-profit that produces and promotes conferences that feature performing artists, but also some speakers.

---

[2] Citations to the Administrative Record refer to the redacted Joint Appendix filings available at ECF No. 52-2 and 53-1.  *See* Notice of Filing of Redacted LCvR 7(n) Joint App'x, ECF Nos. 52 & 53, Joint App'x, ECF Nos. 52-2 & 53-1.

*See* AR 117.  The conferences are held under the tradenames Women of Joy, Gridiron Men, and Celebrators.  *See id.*

On August 18, 2021, Plaintiff applied for an SVOG award of $3,260,619.45 as a live venue operator or promoter.  AR 1–2.  In an attached "Certificate of Need" to the application, which is "[a] good faith certification that the uncertainty of current economic conditions makes the grant necessary to support the ongoing operations of the eligible person or entity," AR 891, Plaintiff explained that its conferences "primarily use[] performing artists to present concerts, musical sets, or comedy presentations to encourage the attendees to enjoy life," AR 117.  Plaintiff stated that it contracted with musical artists to appear at these events.  *Id.*  And it stated that over 70% of its revenues came from these events.  AR 118.  Further, as a result of COVID-19, Plaintiff averred that it suffered massive cancellations and requests for refunds, having returned over $2 million in ticket purchases in April and May 2020.  AR 120.

Plaintiff submitted several categories of documents to show its eligibility.  In addition to financial information, *see, e.g.*, AR 361–62, Plaintiff's other evidence included maps of venues it rented for events, AR 134–38; lighting and sound invoices, AR 140–53, 155–63, 166–200, 246–75; conference promotional brochures, AR 204–35, 510–75; images of singers and bands performing at those events, AR 202–03, 236–41; contracts and payments for performers and speakers at the events, AR 276–351, 363–487; and signed contracts from various other services related to the events, AR 352–59.  The brochures indicate that each conference presents a mix of musical artists, inspirational and religious speakers, worship leaders, and comedians.  *See, e.g.,* AR 212 (describing the Women of Joy 2020 Tour event in Pigeon Forge, Tennessee); AR 224–25 (describing the October 2019 Celebrators Conference in Pigeon Forge Tennessee); AR 231 (describing the 2019 Gridiron Conference in Birmingham, Alabama).

On September 2, 2021, Plaintiff learned from the SVOG portal that its application was denied. *See* Second Am. Compl., ECF No. 20 [hereinafter Am. Compl.], ¶ 25. Plaintiff alleges that the denial notice gave no explanation for its ineligibility, *id.*, which the SBA does not contest, *see* Defs.' Mot. to Dismiss & Cross-Mot. for Summ. J., ECF No. 32 [hereinafter Defs.' Cross-Mot.], Mem. of P&A in Supp., ECF No. 32-1 [hereinafter Defs.' Mem.], at 2. On September 17, 2021, Plaintiff administratively appealed the denial. AR 576–78. Accompanying the appeal was additional evidence similar to what Plaintiff submitted with its application. *See* AR 598–715, 756–65, 770–76, 792–95. Plaintiff also included an appeal letter, which explained how it met each criterion of SBA's Eligibility Matrix for a promoter. AR 766–69; *see also* Eligibility Matrix at 2, 7–8 (explaining general eligibility requirements and requirements for promoters).

SBA denied Plaintiff's administrative appeal on October 22, 2021. AR 19–20. SBA tersely wrote in an email that, "[a]fter a thorough and comprehensive review of your appeal . . . , your SVOG application remains declined . . . for one or more of the reasons provided below." AR 19. Included in the email was a list of 16 generic reasons for denial, which are referenced in the SVOG Eligibility Matrix. AR 19–20; Eligibility Matrix at 2. According to SBA, Plaintiff's application "was declined, at least in part, based on" its failure to "meet the principal business activity standard for the entity type under which [it] applied" and to "meet one or more eligibility criteria specific to the entity type under which [it] applied." AR 19–20. SBA stated that "the list provided in this email may not be a comprehensive list of reasons for your decline," and provided an option to receive more information by filling out a form. AR 20.

   2.   *Post-Suit Denials*

On January 23, 2022, Plaintiff filed this action seeking judicial review of SBA's denial of its SVOG claim. *See* Compl., ECF No. 1. Thereafter, on April 8, 2022, SBA informed Plaintiff

5

that "[e]ffective immediately," SBA was "rescinding its final decision" of October 22, 2021, and "will re-issue a new decision based on [its] review of the administrative record." AR 18.

On May 11, 2022, SBA issued yet another denial of Plaintiff's SVOG application, reaffirming its prior decision. AR 885–87. This was the first time, however, that SBA included any substantive discussion of the reasons for the denial. According to SBA, Plaintiff's application "did not meet the principal business activity standard" for a live venue operator or promoter. AR 885. SBA began by acknowledging that 82.5% of Plaintiff's 2019 revenue came from "Conference Income," which required SBA to determine "how much of the revenue included in" that income "was generated by the promotion/ production of live artistic performances." AR 886. According to SBA, "eligible revenue . . . does not include income from speeches or lodging." *Id.* SBA stated that it was unclear how much of Plaintiff's revenues came from lodging, ineligible speaker presentations, or eligible live artistic performances, as musical performances were not ticketed separately at the conferences. *Id.* It looked to the submitted event brochures and observed that the primary focus of Plaintiff's events did not seem to be on qualifying artistic performances, but rather on speakers and other ineligible activities. *Id.* It cited the Women of Joy event in the fall of 2019 in Branson, Missouri, and said that live performances represented only 20% of the scheduled activities and the other 80% consisted of speakers and other ineligible activities. *Id.* While recognizing that Plaintiff's events included some live performances, SBA could not attribute at least 70% of Plaintiff's earned revenue to the promotion or production of live artistic performances. AR 887. *See also* AR 823–25 (internal SBA memo discussing similar issues with the application).

In June 2022, Plaintiff submitted in response a "Request for Appeal and Reconsideration" ("June Letter"). AR 897–904. Plaintiff sought to clarify the evidence it had presented, as it "had

6

no knowledge of the reasons for [its] denial and [was] never given an opportunity to clarify[.]" AR 897. Plaintiff first addressed SBA's concerns about income from lodging. It supplied new evidence showing that, even without ineligible revenue earned from lodging, it still met the 70% threshold. AR 899. It also highlighted two other SVOG grantees for whom SBA had considered lodging revenues in determining eligibility. AR 900. Plaintiff next rebutted SBA's finding that only 20% of its conventions involved live performances. Specifically, as to the Branson, Missouri program that SBA had referenced, Plaintiff included a breakdown of the event schedule, which showed that 80% of the event was devoted to performing artists. AR 902. Plaintiff corrected SBA's mistaken assumption that there was only one performing artist; in fact, there were three musical artists, two speakers, and one comedian, and overall, the performing artists were featured in more than 70% of the programming. AR 901–02. Moreover, it brought to SBA's attention an SVOG grantee who had a similar mix of speakers and live performances as Plaintiff. AR 902.

On August 10, 2022, SBA responded. It treated Plaintiff's June Letter as a request to "reconsider its final decision in denying [Plaintiff's] SVOG appeal[,]" even though SBA acknowledged that the term "'reconsideration' in the SVOG program" had a specific meaning "limited to reconsideration of amounts already awarded to eligible SVOG grantees." AR 906 & n.1. Plaintiff's request for "reconsideration" therefore fell outside of SBA's established rules for review.

At the outset of its response, SBA explained that it would not consider any new information included in Plaintiff's June Letter. "[L]ike every other SVOG applicant," SBA said, "PWEA was required to submit the necessary documentation with their application and/or appeal." AR 906. Despite SBA's publicly available guidance "and two opportunities, PWEA did not provide information that would permit the SBA to determine PWEA is eligible." *Id.*

7

SBA went on to reiterate why it denied Plaintiff's appeal. First, it wrote, "[n]othing in the appeal or application adequately demonstrated that the conferences PWEA presents were dominated by live performances such that they would be considered qualifying live events." AR 907. Second, the agency explained that, "[i]n its application and appeal, PWEA did not demonstrate that lodging was related to the live event and integral to the attendance at performances. Additionally, given that PWEA's conventions are not eligible performances under SBA standards, the inclusion of lodging would not change the outcome of the decision in this case." *Id.* Third, it reiterated that it would not consider Plaintiff's new evidence, including the "more detailed schedule of the time spent on each performer." *Id.* "SBA did its best to review publicly available information at the time of [Plaintiff's] application to attempt to determine what performers do during their performances, however, without further information from the applicant SBA was unable to determine the nature of these performances." *Id.* Fourth, SBA did not dispute that "events are [Plaintiff's] principal business activity," but still concluded that Plaintiff had failed to "demonstrat[e] that these events are generating revenue from the promotion/production of live artistic performances." *Id.* In the end, according to SBA, "based upon the application and appeal documents submitted by [Plaintiff], there is nothing in [the June] Letter that would lead SBA to change" its decision. *Id.*

C.  **Procedural History**

On August 25, 2022, Plaintiff amended its complaint to challenge SBA's post-suit denials. *See, e.g.,* Am. Compl. ¶ 60 ("The SBA faulted [Plaintiff] for not submitting evidence that was not required and that [Plaintiff] did not know the SBA would consider relevant on appeal because the agency provided no reason for its initial denial of [Plaintiff's] application."); *see also id.* ¶¶ 31–51. It once more claimed that SBA's actions in denying the PVOG grant were arbitrary and

8

capricious, contrary to law, and unsupported by substantial evidence under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Compl. ¶¶ 57–71.

Plaintiff then moved for summary judgment, and SBA cross-moved to dismiss and for summary judgment. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 28 [hereinafter Pl.'s Mot.]; Defs.' Cross-Mot. SBA later withdrew its sole argument in favor of its motion to dismiss, *see* Notice Regarding Mootness, ECF No. 46, so the court addresses only the cross-motions for summary judgment.

## II.   LEGAL STANDARD

In an APA matter, "the reviewing court generally reviews the agency's decision as an appellate court addressing issues of law." *Pol'y & Rsch., LLC v. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (cleaned up). The court is limited "to the administrative record and the facts and reasons contained therein to determine whether the agency's action was consistent with the relevant APA standard of review." *Id.* (internal quotation marks and citation omitted).

The court "review[s] the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence." *New LifeCare Hospitals of North Carolina, LLC v. Becerra*, 7 F.4th 1215, 1222 (D.C. Cir. 2021) (quoting *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 639 F.3d 534, 537 (D.C. Cir. 2011)). "The arbitrary and capricious standard . . . is a 'catchall' that generally subsumes the 'substantial evidence' standard." *Mae Capital LLC, v. SBA*, No. 22-cv-776 (TSC), 2025 WL 915534, at *5 (D.D.C. Mar. 26, 2025) (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984)); *see also Ass'n of Data Processing Serv. Orgs.*, 745 F.2d at 683 ("[I]n their application to the requirement of factual support[,] the substantial evidence test

and the arbitrary or capricious test are one and the same."). In an arbitrary and capricious challenge, courts review whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). Such a review is "narrow" and the court "is not to substitute its judgment for that of the agency." *Id.*

### III.  ANALYSIS

Plaintiff challenges two determinations made by SBA. First, Plaintiff contests SBA's conclusion that it "failed to establish at least 70% of its earned revenue can be attributed to the promotion or production of 'eligible' live artistic performances." *See* Pl.'s Mot. at 14. According to Plaintiff, SBA acted arbitrarily and capriciously because it erroneously determined that many of its conference presenters were not "eligible" because they provided "educational lectures" instead of entertainment. *Id.* at 4, 14–15. Further, Plaintiff asserts that SBA acted arbitrarily and capriciously in a quantitative manner too, by determining that the "eligible" live-performance components of Plaintiff's events were "not plentiful enough in comparison to other performances SBA deemed 'ineligible.'" *Id.* at 4; *see id.* at 15. Second, Plaintiff argues that SBA arbitrarily and capriciously excluded its lodging revenues from the overall calculation. *Id.* at 5, 16–17. According to Plaintiff, SBA provided awards to other applicants who included lodging income within their revenues. *Id.* at 5, 17–18.

The court does not, however, reach the merits of these claimed errors, because SBA's defense falters on a procedural mistake. Plaintiff argues that "[t]he SBA did not substantively address [its] additional information" from the June Letter "in its August 10, 2022 denial, but rather simply dismissed the additional information as untimely." *Id.* at 15. That SBA did not consider

Plaintiff's new evidence submitted with its June Letter is not disputed. *See* Defs.' Mem. at 10. According to Plaintiff, this means that SBA has not "substantively justified" its initial assessment that Plaintiff's "live events were insufficiently 'artistic,'" Pl.'s Mot. at 15, and that SBA should have considered Plaintiff's additional arguments as to lodging revenue and its competitors, *id.* at 17–18. The court agrees that SBA acted arbitrarily and capriciously in refusing to consider additional information submitted with Plaintiff's June Letter.

Two basic precepts of administrative law frame the court's discussion. The first is that an "agency must explain why it decided to act as it did." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). The second is that an agency acts arbitrarily and capriciously when it "refus[es] to consider evidence bearing on the issue before it" or ignores "evidence contradicting its position." *Id.* It is undisputed that only after Plaintiff filed suit did SBA explain why it had denied the grant request: Plaintiff had not shown that at least 70% of its earned revenue was attributable to the promotion or production of live artistic performances. Plaintiff provided additional evidence to rebut this reasoning, but SBA declined to consider it. SBA defends that decision, maintaining that "its choice to disregard [Plaintiff's] untimely submission was not arbitrary or capricious" because "SBA had previously explained the need to submit materials demonstrating one's grant eligibility and provided [Plaintiff] two prior chances to submit such materials." Defs.' Mem. at 10.

The problem with that explanation is that SBA points to no rule or policy that permitted it to ignore new evidence once it agreed to "reconsider" its decision on appeal. To be sure, an agency can generally "insist[] upon strict adherence to its rules." *Westar Energy, Inc. v. Fed. Energy Regul. Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). And such insistence is not usually deemed arbitrary and capricious. *See id.* But here, SBA deviated from its own procedures when it agreed

11

to "reconsider" its decision on Plaintiff's appeal.  Once it did so, the APA required it to consider Plaintiff's new evidence.

Recall, SBA established two types of review under the SVOG program.  The first was an appeal from a denial.  SBA told applicants that, due to the program's "complex" statutory eligibility requirements, it wished "to provide additional process for [ ] applicants who are eligible under statute to attempt to prove their eligibility."  FAQ at 36.  The second avenue of review was a request for "reconsideration."  *Id.* at 37–38.  SBA gave the term "reconsideration" a particular meaning under the SVOG program.  Only "[a]pplicants who received an award amount at least $100 less than the Proposed Grant Amount on their application" could seek reconsideration to try to secure the shortfall amount.  *Id.* at 37.  Plaintiff was not eligible for "reconsideration" because it had not received any grant award.  Plaintiff thus only could "appeal" the appeal denial.  But SBA made clear that there was no process for such review.  It told applicants: "[T]here is no secondary appeals process through the SVOG program.  Determinations on appeal are the final agency decisions."  *Id.*

Yet, a "secondary appeals process"—and then some—is precisely what SBA gave Plaintiff.  It first "rescind[ed]" its final decision on appeal after Plaintiff filed this lawsuit, AR 18, and a month later, "issue[d] a new decision," *id.*, which for the first time offered a reasoned explanation for denying Plaintiff's application, AR 885–87.  It then took a *third* look at Plaintiff's application on appeal, when it responded to the June Letter.  AR 906–08.

"[I]t is elementary that an agency must adhere to its own rules and regulations.  *Ad hoc* departures from those rules, even to achieve laudable aims, cannot be sanctioned, for therein lie[s] the seeds of destruction of the orderliness and predictability which are the hallmarks of lawful administrative action."  *See Reuters Ltd. v. F.C.C.,* 781 F.2d 946, 950–51 (D.C. Cir. 1986)

(citation omitted).  It may have been "laudable" for SBA to rescind its initial appeal denial, substitute in a new decision, and later substantively respond to Plaintiff's June Letter.  But doing so deviated from the SVOG program's policies.  SBA acknowledged as much, stating in a footnote in its August reconsideration letter that its "willingness to review [Plaintiff's] letter in this limited instance (based upon the specific timing and circumstances of this litigation, . . . ) is not a waiver of SBA's policies, FAQs or other guidance with respect to the SVOG program."  AR 906 n.1.  But SBA's professed non-waiver is self-serving.  Having afforded Plaintiff review that it had told applicants was not available, SBA could not then pick and choose rules of process that suited only the agency.  It could not simply declare as untimely Plaintiff's submission of new evidence, when it had given applicants no such warning.  The default rule under the APA is that agencies must "consider evidence bearing on the issue before it."  *Butte Cnty.*, 613 F.3d at 194.  SBA's refusal to consider the evidence submitted with Plaintiff's June Letter therefore was arbitrary and capricious.

Finally, there is the question of prejudice.  "Courts reviewing agency action under section 706(2)(A)'s arbitrary and capricious standard must take due account of the rule of prejudicial error."  *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (internal quotation marks and alterations omitted).  While the plaintiff does not bear a "particularly onerous" burden to show prejudicial error, "[i]f prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further."  *Id.* (internal quotation marks and citations omitted).  Here, SBA's failure to consider additional evidence was prejudicial to Plaintiff.  SBA found, based on one brochure of one event, that "applicant's conference event is comprised of roughly 20% eligible activities (one concert out of five event sessions)."  AR 824–25; *see also* AR 886–87.  Plaintiff's June Letter provides evidence contradicting that conclusion. Plaintiff explained that, at the cited conference, out of six presenters, there were three musical

artists and one comedian. AR 901. Two others were speakers, but as a percentage of the whole event, their time on stage was far less than the performing artists, and the performing artists comprised more than 70% of the event's programming. AR 901–02. Plainly, this evidence was relevant to Plaintiff's qualification for the SVOG program, and SBA's failure to consider it was prejudicial.

* * *

Because the court views SBA's procedural error as enough to warrant remand to the agency, it declines to address Plaintiff's merits arguments at this juncture. Where an agency "has not considered all relevant factors" "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The SBA very well may come to the same conclusion on remand. If it does so, however, it must be based on all the evidence presented by Plaintiff.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 28 is granted, and Defendants' Motion to Dismiss and Cross-Motion for Summary Judgment, ECF No. 32, is denied. This case is remanded to SBA to consider Plaintiff's June Letter and for further proceedings consistent with this opinion.

Dated: March 31, 2025

Amit P. Mehta
United States District Court Judge